MATTER OF TACA INTERNATIONAL AIRLINES PLANE "FLIGHT 110"

In Fine Proceedings

NOL-10/61.335

*Decided by Board September 30, 1969*

Liability to fine for failure to prevent the unlawful landing of an alien lies under section 271(a), Immigration and Nationality Act, where the airline failed to present, as directed, an alien passenger returned to its custody for deferred inspection. Mitigation of the $1,000 imposed fine beyond the extent of $300 is not warranted since no precautions were taken to prevent the illegal entry of the alien who was permitted to proceed to a hotel of his own designation without further safeguards.

N RE: TACA INTERNATIONAL AIRLINES PLANE "FLIGHT 110" which arrived at the port of New Orleans, La., from Honduras, on March 16, 1969. Alien passenger involved: Jose Omar Quijana Rodriguez.

ASIS FOR FINE: Act of 1952—Section 271(a) [8 U.S.C. 1321].

N BEHALF OF APPELLANT:   Peter J. Messina, Station Mgr.
                         Taca International Airlines, SA
                         P. O. Box 428
                         Kenner, Louisiana 70062

This matter is before us on appeal from a decision of the Dis-ct Director at New Orleans, Louisiana, dated June 24, 1969, di-:ting that a fine in the amount of $700, $1,000 mitigated to the tent of $300, be imposed on Taca International Airlines, SA, as ners of the above-described aircraft, for failure to deliver the ›ve-named alien passenger for immigration examination, as or-:ed.

The material facts of this matter are not disputed between the :ties and, indeed, an independent review of the record reveals basis for a factual dispute. The carrier brought the person ned above, a Colombian national, to the United States as a senger at the time, place and in the manner described above. presented a Colombian passport and a nonimmigrant visa is-d to him on February 25, 1969, by the American consultate,

Bogota, Colombia, permitting his application for admission as a temporary visitor for pleasure. The examining immigration officer deferred his inspection to permit him to show that he had funds sufficient to support himself while visiting in the United States. In connection therewith, however, the passenger was returned to the custody of the carrier which was served with a Form I–259 directing it to deliver the passenger to the Service office in New Orleans on March 17, 1969, at 10:30 a.m. On that date the carrier reported that the alien had not registered at the designated hotel, and that he could not be located. He has not since been found.

The Congress, in enacting this statute, made it the duty of the owners, officers and agents of carriers to prevent the landing of aliens in the United States at any time or place other than as designated by immigration officers. Clearly, the intention of the statute was to make imperative the duty of preventing such unlawful landings of aliens. That is, section 271 of the Immigration and Nationality Act calls for the imposition of a penalty where, as here, the persons specified in the statute failed in their duty to prevent an illegal entry. In other words, the statute creates a positive duty on the part of the persons named therein to prevent the illegal entry into the United States of an alien brought here on a vessel or aircraft. See *Matter of Plane "NC–SJD–004,"* 5 I. & N. Dec. 482. Accordingly, and on the basis of the foregoing, we conclude that liability to this fine has been established.

There remains, however, the question of whether more mitigation than has already been authorized by the District Director is warranted in these premises and, if so, how much. On this point, the following factors, though not exclusive, are elements to be considered:

(1) notice to the hotel by the carrier of intention to lodge the passenger there;

(2) delivery of the passenger detained by the carrier to the hotel;

(3) subsequent delivery to the Service for a hearing (inspection);

(4) efforts on the part of the carrier to locate the alien who has absconded; and

(5) actual return of the alien to the carrier and removal by the latter from the United States.

The more of these factors that are present, obviously, the more mitigation authorized. Here, however, we do not find the presence

391

of sufficient factors warranting any change in the District Director's decision.

The record reflects that no precautions were taken to prevent the illegal entry of the alien, despite the fact that the carrier had been put on notice of his character by his efforts to bribe one of its representatives for his passport. The carrier merely permitted the passenger to go to a hotel of his own designation where he did not stay. The least that could have been expected would have been his placement in a lodging by the carrier with arrangements with the management thereof to immediately give notice of his departure. As we have already indicated, the passenger is still at large in this country and the carrier is required to furnish his return transportation, as a matter of law.

The carrier has indicated that when the passenger did not appear for his deferred inspection, its reservation agents who would recognize him checked hotels in the business district and in the vicinity of the airport. The carrier asserts that this was done on an overtime basis by the agents, at considerable cost to it. The carrier also asserts that it contacted United States immigration officers, border patrol stations, and the local police in an effort to locate the man. We, however, think that these factors, viewed in the light of the carrier's failure to take proper advance precautions, have been properly evaluated by the District Director in arriving at his decision as to the amount of mitigation merited.

Finally, we note that the carrier had set forth that since this passenger failed to report, it has placed all such people released to its custody under the surveillance of an armed guard; and that passenger recently returned to its custody cost it over $100 detention expenses. While these factors do show good faith on the part of the carrier, they do not establish the existence of proper diligence with respect to the matter presently under consideration. Accordingly, no change will be made in the District Director's decision.

**ORDER:** It is ordered that the request for cancellation or further mitigation of the fine be denied; that the District Director's decision of June 24, 1969, be affirmed; and that the appeal be and the same is hereby dismissed. The penalty permitted to stand is $00.